# Kelemenan *v.* Pittsburg, Harmony, Butler & New Castle Railway Company, Appellant.

*Street railways—Right of way deed—Farm crossings—Covenant running with the land—Negligence—Cattle killing.*

1. A covenant in a right of way deed to a street railway company by which the grantee binds itself to construct farm crossings at points

designated by the grantor is a covenant running with the land, and under it, a tenant of the grantor who drives his cattle over one of such crossings cannot be declared as a matter of law a trespasser upon the right of way.

2. In an action by the tenant against the railway company to recover damages for killing cattle at the crossing, it is not reversible error for the trial judge to permit the witnesses for plaintiff to compare the speed of the car which killed the cattle with other cars run on the line, if they do not give any estimate of the rate of speed in miles, and do not compare the speed of the car in question with the speed of cars of other companies, and the judge charges that the company in operating its cars on its own private right of way might run them at such speed as it desired.

3. In such a case a verdict and judgment for plaintiff will be sustained where the evidence warrants a finding that the car in question gave no signal as it approached the crossing, and also a finding that when the car reached a point from which the crossing was visible, it was either moving at such a rate of speed that it was impossible to stop it before the crossing was reached, or, if it could have been stopped in time, those operating it did not make proper efforts to stop it when they saw the cattle upon or at the edge of the track.

4. An employee of the plaintiff testified that he had been directed to bring to his employer's barn some cattle which were in the field across the right of way. He stood at a gate in the fence on the right of way next the barn and watched a regular passenger car go by, he then opened the gate, crossed the track and just before opening the gate on the other side where the cows were he looked up and down the tracks, and seeing no car, opened the gate, when three of the cows pushed by him: he then again looked up the track and saw a freight car at the top of a hill 500 or 600 feet away. He then jumped in front of the rest of the cattle, some twelve or fourteen head, and prevented their entering upon the track. In the meantime the freight car ran over the crossing and killed the three cows which had gotten onto the track. The court charged as follows: "Now did he look immediately before he opened the gates or admitted the cows to the right of way of the defendant company? If he did not look at that time, if he looked just before opening the gate when on the other side of the track, and then walked from there over to the side of the track where the cows were and opened the gate without looking between the time of opening the first gate and letting the cows out on the track, he would be guilty of contributory negligence and such contributory negligence would be attributable to the plaintiff and thereby defeat his right to recover." *Held*, that this instruction properly fixed the measure of duty of the plaintiff and his employees in using the crossing.

Argued May 15, 1912. Appeal, No. 75, April T., 1912, by defendant, from judgment of C. P. Lawrence Co., June T., 1910, No. 78, on verdict for plaintiff in case of John Kelemenan v. Pittsburg, Harmony, Butler & New Castle Railway Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for the killing of three cows. Before WILLIAM E. PORTER, P. J.

At the trial plaintiff's counsel first offered in evidence a deed dated September 22, 1906, from John W. Wilkison, guardian of the estate of Chris Smith, minor child of Samuel H. Smith, late of Shenango township, Lawrence county, Pennsylvania, deceased, Eunice Smith, widow, and Pearl Smith, minor, etc., to the Pittsburg, Harmony, Butler & New Castle Railway Company, for the purpose of showing that at the time when the Pittsburg, Harmony, Butler & New Castle Railway Company purchased its right of way through the farm rented by Mr. Kelemenan that it undertook to place thereon certain crossings. This is to be followed by evidence to show that the injury occurred at one of the crossings designated in the deed just offered in evidence.

Objected to by defendant's counsel as incompetent for any purpose in this case, there being no privity of contract between the defendant company and the plaintiff and whether there was or was not any undertaking in that deed to construct crossings would be immaterial unless there was a crossing in fact at the place where the accident is alleged to have happened.

Counsel for plaintiff expect to follow this with proof that the plaintiff in this case was at the time of the accident occupying the premises owned by the heirs of Samuel H. Smith as tenant, and also to follow the offer by testimony showing that the crossing was established at this place, gates were put in by the railroad company and that it was used as a crossing by the plaintiff and by persons occupying the farm there.

Objected to by defendant's counsel as incompetent for the reason that there is no privity of contract between the defendant company and the plaintiff, and that the only matter contained in the deed relative to crossings is a personal agreement and not one belonging to the land.

The Court: We will admit the offer and seal an exception for the defendant. [1]

Judge MARTIN: It is hardly necessary to read all that; unless you wish to.

Portion of deed offered read in evidence as follows:

"To have and to hold the said right of way with the appurtenances unto the said party of the second part, its successors and assigns, firm and stable forever. Said right of way hereby granted or mentioned and intended so to be with the appurtenances shall be fenced with a five strand barbed wire fence on locust posts, to be set not farther than twelve feet apart. And second party shall construct and maintain said fence. And further, second party shall construct and maintain for said first parties five crossings to be put in where designated by first parties and shall keep and maintain a stop for local cars opposite the dwelling-house on said first parties farm."

A witness for plaintiff was asked this question:

"Q. Did you observe how fast this car was coming the day your cows were killed? A. Yes, sir. Q. How did its speed compare with the speed of other cars that go by your place there?"

Objected to as incompetent and irrelevant, it not appearing that all other cars that ran past that place ran at the same rate of speed, and it appearing that they ran at a fast or high rate of speed, and that even if the witness were to testify that this particular car ran faster than some other cars it would be no evidence that this car was running at an excessive rate of speed.

The Court: We will permit the witness to answer and seal an exception for defendant. [2]

"A. This car was running faster than what the regular cars are run past there."

56   KELEMENAN *v.* P., H., B. & N. C. RY. CO., Appellant.

Statement of Facts—Charge of Court below.   [52 Pa. Superior Ct.

Another witness was asked the question:

"Q. At what speed did the cars travel past the farm there?  A. They go pretty fast, I couldn't tell you.  Q. How did the speed of this car that caused the accident compare with the ordinary speed of the cars past there?"

Objected to as incompetent, irrelevant and immaterial, the witness not having qualified to answer the question.

The Court: The witness may answer and an exception is sealed for the defendant. [4]

"A. It went at about the same speed as the rest of the cars."

A third witness was asked this question:

"Q. Do you observe the speed at which these cars travel?  A. I think they don't all travel the same speed, some of them go very fast and others slower.  Q. State what was the speed of this car as compared with the other cars that go by there?"

Judge MARTIN: Which one of the other cars, the slower ones or those that went faster?

Mr. Chambers: With the ones that go fast past there and in comparison with the speed of this particular car.

Objected to as incompetent and irrelevant.

The Court: The witness may answer the question and an exception is sealed for the defendant. [5]

"A. It went as fast as any of them ever travel past there."

The court charged in part as follows:

[There is one question here that you must first decide before you proceed to the main issue in this case, or to the issue raised by the allegation of negligence, and that is the question as to whether or not there was a crossing at this place.] [6]

[We will submit that question to you as a matter of fact to be determined by you in this case, whether or not there was a crossing at that place.  It appears that when the Smith heirs made their conveyance to the defendant company there was an agreement contained in the deed by

which the defendant "shall construct and maintain for said first parties (that is, the grantors, the Smith heirs) five crossings to be put in where designated by first partes." Now when this conveyance was made, this agreement was made and incorporated in the deed. Later it appears that one Mr. Fisher was engaged in the building of the fences along the tracks of the defendant company and that Mr. Wilkison, who was acting as guardian for one of the Smith heirs, and as agent I believe for Mrs. Smith, and I do not remember whether he stated he was acting as agent for the other heirs or not, but anyhow he spoke to Mr. Fisher and stated where the gates were placed where these cows were driven or attempted to be driven across the track. Now, it is a question for you to determine whether or not this place was designated as a crossing. Had Mr. Fisher authority from the defendant company to construct the gates at this place? Was that a part of his business,—was he authorized by the company to construct the gate at the place that Mr. Wilkison designated? And if he had authority to do that was the gate constructed as a part of the fence as such or was it constructed as a mere step in the construction of the crossing and then did that constitute such a crossing as was sufficient and necessary for the purposes to which it was applied? You have heard the testimony of the witnesses upon that question and it is for you to determine, first in your deliberations upon this case as to whether or not there was a crossing constructed upon this farm at the place where these cows were killed. If there was a crossing there then we say to you that when the plaintiff went upon the farm he had the same right relative to the occupancy and the use of it, the crossing over the street railway track that the Smith heirs would have had had they been upon the farm, it appearing that the plaintiff was a tenant and had rented the premises. Now, we leave that question with you to decide, whether or not there was a crossing there, and say to you that if there was a crossing there when plaintiff went on that farm, as to the

use of it, he would have the same rights that the Smith heirs had.] [7]

[That brings us to the question whether or not this young man on that evening used due diligence. Was he reasonably careful in observing to see whether or not a car was approaching. Did he look along the track immediately before he let the cows out? Because I think we should say to you, as a proposition of law, that if he did not look to see whether or not a car was approaching just before opening the gate to let the cows out that he would be guilty of contributory negligence because he knew the defendant company operated its cars along and over that track. The defendant company had a right to operate its cars there at any time it saw fit. So the duty was imposed upon this young man to look and see whether or not a car was approaching, and that duty rested upon him up to the point of committing himself to the act of driving the cows upon the track. Now, did he look immediately before he opened the gates or admitted the cows to the right of way of the defendant company? If he did not look at that time, if he looked just before opening the gate when on the other side of the track and then walked from there over to the side of the track where the cows were and opened the gate without looking between the time of opening the first gate and letting the cows out on the track he would be guilty of contributory negligence and such contributory negligence would be attributable to the plaintiff and thereby defeat his right to recover.] [8]

Verdict and judgment for plaintiff for $173.33. Defendant appealed.

*Errors assigned* were (1, 3–5) rulings on evidence, quoting the bill of exceptions, and (6–8) above instructions, quoting them.

*L. Norman Martin,* for appellant.—There was no crossing in fact ever constructed. The provision in the deed

from Wilkison, guardian et al., to defendant relative to crossings was improperly admitted in evidence.   Even under the provision improperly admitted there never was any designation of, or request for a crossing at the place where the accident happened.   There was no evidence as to improper speed, and the court improperly admitted evidence on the question of speed.   There was a proper headlight and other signals.   There was contributory negligence on the part of the plaintiff: Burke v. Union Traction Co., 198 Pa. 497; Moser v. Union Traction Co., 205 Pa. 481.

*James A. Chambers,* of *Akens, Wilkison, Lockhart & Chambers,* for appellee.—There was a crossing: Pennsylvania Co. v. Allen, 3 Penny. 170; Kay v. Penna. R. R. Co., 65 Pa. 269; Taylor v. Delaware & H. Canal Co., 113 Pa. 162; Metzler v. Phila. & Reading Ry. Co., 28 Pa. Superior Ct. 180.

The defendant was negligent: Lenkner v. Citizens' Traction Co., 179 Pa. 486; Wilson v. Northside Traction Co., 10 Pa. Superior Ct. 325; Raulston v. Traction Co., 13 Pa. Superior Ct. 412; West Philadelphia Passenger Ry. Co. v. Mulhair, 6 W. N. C. 508; McGovern v. Union Traction Co., 192 Pa. 344; Hamilton v. Consolidated Traction Co., 201 Pa. 351; McWilliams v. Keim, 22 W. N. C. 372; Laib v. Pennsylvania R. R. Co., 180 Pa. 503; Epley v. R. R. Co., 3 Pa. Superior Ct. 509.

The plaintiff was not guilty of contributory negligence: Hanlon v. Philadelphia, etc., Traction Co., 28 Pa. Superior Ct. 223.

OPINION BY PORTER, J., October 14, 1912:

The plaintiff brought this action to recover the value of three cows which had been killed while crossing a track of the defendant company, as alleged by plaintiff because of the negligent operation of one of defendant's cars.   He recovered a verdict and judgment in the court below and the defendant appeals.

The plaintiff occupied, as tenant, a farm through which

the defendant operated an electric railway constructed
upon a right of way which it had acquired by deed from
the owners of the farm.  The deed conveying the right of
way contained the following covenant: "Said right of way
hereby granted or mentioned and intended so to be with
the appurtenances, shall be fenced with a five-strand barb
wire fence on locust posts, to be set not farther than twelve
feet apart.  And second party shall construct and main-
tain said fence.  And further, said second party shall con-
struct and maintain for said first parties five crossings to
be put in where designated by said first parties."  The
plaintiff produced evidence that the owners of the farm,
from whom he rented, had given notice to the party who
represented the defendant company in the erection of the
fences, designating the points at which the crossings were
to be located, one of which was at the point where this
accident occurred.  The fence was erected by the defendant
company, upon both sides of the right of way, and at the
point in question gates were placed in the fences at each
side of the track, and those gates were there maintained
by the defendant company, from the time the line was
constructed until after the date of the trial in the court
below.  The plaintiff produced evidence which, if be-
lieved, established that he and prior occupiers of the
farm had during all of this period availed themselves of
the gates thus provided by the company and used this
place as a crossing for the purpose of driving their cattle
to and from the fields to the barn yard.  The court could
not, in the face of this evidence declare as matter of law
that the plaintiff did not have a right to drive his cattle
across the tracks at this point, or that he was a trespasser
in so doing.  The court left to the jury, in a manner of
which the defendant has no cause for complaint, the ques-
tion whether this location had been designated as one of
the crossings and used as such by the owners and occupiers
of the farm.  The covenants of a deed are to be construed
in the light of the circumstances, in order to accomplish
the intention of the parties, and such a covenant as that

here presented does not give to the grantor a mere personal right to pass over the track; it is a covenant running with the land, and those who acquire title to the farm have a right to use the crossings. The question of the location and use of this crossing having been passed upon by the jury, and the appellant having withdrawn all the specifications of error as to the manner in which that question was submitted to the jury, the verdict must be accepted as establishing the right of the plaintiff to use the crossing. He was not a trespasser.

The testimony admitted under the exceptions upon which the third, fourth and fifth specifications of error are founded worked no injury to defendant's cause. The witnesses referred to did not testify that the car was being operated at a dangerous rate of speed, nor did they attempt to make any estimate of the rate of miles per hour at which it was moving, nor to compare its speed with that of cars operated upon any other lines. The testimony of those witnesses established that they had for a considerable period lived very near the line of the defendant company and had observed the speed at which its cars were operated, that two or three cars passed along the line every hour. One of the witnesses said that the car in question was running faster than the regular cars ran there. The second witness said that the car moved at about the same speed as the rest of the cars, and the third witness said, that the speed of the regular cars varied and that the car in question went as fast as any of them ever traveled past there. The court instructed the jury that: "The defendant company has a right to operate its cars over and along the track that is built by it through the farm occupied by the plaintiff, it being a private right of way, and so far as persons living along its tracks are concerned it has a right to operate its cars at such speed as it may desire. This instruction eliminated any question of negligence arising from the rate of speed at which the car was operated, and the third, fourth and fifth specifications of error are dismissed.

Several witnesses called by the plaintiff testified that the car had given no signal of its approach to the crossing. The defendant did not make any serious attempt to show that a signal had been given, it was maintaining that there 'was no crossing at that point and that it was not necessary to give any signal, announcing the approach of the car. The defendant was content, upon this branch of the case, to produce evidence tending to establish that a whistle had been blown and bell rung before the car had passed another crossing, about 1,100 feet distant. The car was approaching this crossing over which the plaintiff had a lawful right to drive his cattle, and it was the duty of those operating the car either to give a signal in time to permit a party about to use the crossing to avoid the danger, or if a signal was not given, to approach the crossing with the car under such control that it could be stopped before the crossing was reached if, when the car reached a point from which the crossing became visible, it was found that persons or animals were crossing the track. The evidence certainly warranted a finding that this car gave no signal of its approach to the crossing. It warranted the further finding that when the car reached a point from which the crossing was visible it was either moving at such a rate of speed that it was impossible to stop it before the crossing was reached, or, if the car could have been stopped before reaching the crossing, those operating the car did not make proper efforts to stop it when they saw the cattle upon or at the edge of the track. The learned judge of the court below submitted the question of the negligence of the employees of the defendant company to the jury, with instructions which have not been assigned for error. The question of such negligence was for the jury, and it would have been improper for the court to give binding instructions in favor of the defendant.

The appellant has no just cause to complain of the manner in which the question of the contributory negligence of the plaintiff, or his servant, was submitted to the jury.

The employee of the plaintiff who had been delegated by the latter to drive the cattle from the field, testified that he stood and watched the regular passenger car going past and then opened the gate on the side of the right of way next the barn, that he crossed the track and just before opening the gate for the cows, upon that side, looked up and down the track to see whether the track was clear after the other car had passed; seeing no car, he opened the gate, when three of the cows pushed past him, he again looked up the track and saw an approaching freight car, the car which killed the cattle, at the top of the hill 500 or 600 feet away. He then jumped in front of the remainder of the herd, some twelve or fourteen head of cattle, and prevented their entering upon the track, and the freight car ran down over the crossing and killed the three cows. This witness testified through an interpreter, and his cross-examination may have tended to throw some doubt upon whether he had looked up and down the track immediately before opening the gate, which permitted the cattle to go upon the track, but the truth of his testimony was for the jury. There can be no question that if this witness told the truth the cows were upon the track when the car appeared at the top of the hill, 500 or 600 feet away. The court instructed the jury, upon this point, as follows: "Now did he look immediately before he opened the gates or admitted the cows to the right of way of the defendant company? If he did not look at that time, if he looked just before opening the gate when on the other side of the track and then walked from there over to the side of the track where the cows were and opened the gate without looking between the time of opening the first gate and letting the cows out on the track he would be guilty of contributory negligence and such contributory negligence would be attributable to the plaintiff and thereby defeat his right to recover." This instruction properly fixed the measure of duty of the plaintiff and his employees in using this crossing; to require more would be practically to prevent his use of the crossing under any

circumstances: Hanlon v. Traction Company, 28 Pa. Superior Ct. 223. The specifications which have not been withdrawn by the appellant are dismissed.

The judgment is affirmed.